## UNITED STATES DISTRICT COURT
### District of Maine

|  |  |  |
|---|---|---|
| JADEN BROWN, | ) | Docket No.   2:20-CV-00478-NT |
| Plaintiff | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| CUMBERLAND COUNTY, KEVIN | ) |  |
| JOYCE, TIMOTHY KORTES, MARK | ) |  |
| RENNA, SAM DICKEY, DEPUTY | ) |  |
| BRADY, and DEPUTY HASKELL, | ) |  |
| Defendants | ) |  |

## DEFENDANTS' MOTION TO DISMISS COMPLAINT WITH INCORPORATED MEMORANDUM OF LAW

NOW COME Defendants, through counsel, and hereby move this honorable Court pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss Plaintiff's Complaint.

### I.   INTRODUCTION

The Plaintiff's Complaint is based on two separate allegations: (1) that she was handcuffed as a pregnant inmate in violation of state statute and constitutional law, and (2) that corrections officers were present during the labor and delivery of her child.   The former is brought against Mark Renna, and the latter against Sam Dickey and Deputies Brady and Haskell. All are brought under 42 U.S.C. § 1983 and the Maine Civil Rights Act.   Plaintiff also alleges supervisory liability on the parts of Defendants Joyce and Kortes, and municipal liability claims against Defendant Cumberland County.   In addition, Plaintiff's Complaint alleges that the Defendants are liable for civil rights conspiracy under both 42 U.S.C. § 1985(3) and state law.

## II.   STANDARD OF REVIEW

When reviewing a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court must "assume the truth of all well-pleaded facts and indulge all reasonable inferences that fit the Plaintiff's stated theory of liability".   *Centro Medico Del Turabo v. Feliciano De Melecio*, 406 F.3d 1, 5 (1st Cir. 2005) (citation omitted).   The court does not have to consider bald assertions and unsupportable conclusions.   *Id.* at 5-6.   "[D]ismissal for failure to state a claim will be appropriate if the pleadings fail to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."   *Id.* at 6 (citation omitted).   The complaint must allege "a plausible entitlement to relief."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007).   "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   The specific legal standards applicable to the different causes of action limned in the Complaint will be set forth below.

## III.   ARGUMENT

**A.    The individual officers are entitled to qualified immunity on the constitutional claims.[1]**

All government officials who are performing discretionary functions are entitled to qualified immunity if their conduct does not violate clearly established rights of which a reasonable person would have known.   *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).   The qualified immunity inquiry is a two-part test.   *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Maldonado v. Fontanes*, 568 F.3d 263, 268-69 (1st Cir. 2009).   The first part of this inquiry considers whether

---

[1] "[T]he protections provided by the Maine Civil Rights Act, including immunities, are coextensive with those afforded by 42 U.S.C. § 1983."   *Estate of Bennett v. Wainwright*, 548 F.3d 155, 178-79 (1st Cir. 2008).   Thus, claims under the MCRA are resolved by the Court's determination of the Section 1983 claims.

the facts alleged show that the officer's conduct violated a constitutional right.[2] *Saucier v. Katz*, 533 U.S. 194, 201 (2001).   The second part of this inquiry is whether that right was clearly established.   *Id.*

"The clearly established prong of qualified immunity involves two inquiries. It first asks whether the precedent is clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Next, it asks whether the rule's contours were so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Fagre v. Parks*, 985 F.3d 16 (1st Cir. 2021)(citations and quotations omitted).   The first part of this inquiry creates an exacting standard, and requires that "[t]he rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589-90 (2018).   The court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).   The United States Supreme Court "ha[s] not yet decided what precedents—other than [its] own— qualify as controlling authority for purposes of qualified immunity." *Wesby*, 138 S. Ct. at 591 n.8.   The First Circuit has stated that "sister circuit law is sufficient to clearly establish a proposition of law when it would provide notice to every reasonable officer that his conduct was unlawful." *Irish v. Fowler*, 979 F.3d 65, 76 (1st Cir. 2020).

The second part of the inquiry involves evaluation of the facts of the case:

> The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct.   It is sometimes difficult for an officer to determine how the relevant legal doctrine, . . . will apply to the factual situation the officer confronts. . . . If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the

---

[2]The court has discretion to decide which prong of the analysis should be addressed first. *Pearson*, 555 U.S. at 236.

immunity defense.

*Saucier v. Katz*, 533 U.S. 194, 205 (2001).   The qualified immunity standard is very broad and protects "all but the plainly incompetent or those who knowingly violate the law."   *Wesby*, 138 S. Ct. at 589.

        1.     <u>Defendant Renna is entitled to qualified immunity on the claim that he handcuffed the Plaintiff when she was pregnant.</u>

        a.  Plaintiff's handcuffing claim does not state a constitutional violation.

This claim is analyzed under the Eighth Amendment.[3]   Courts have analyzed claims involving the handcuffing or other restraint of pregnant inmates using a combination of the analyses for denial of medical care claims and conditions of confinement claims.   *See Mendiola-Martinez v. Arpaio*, 836 F.3d 1239 (9th Cir. 2016) ("shackling claims do not fit neatly into either category"); *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563 (6th Cir. 2013) (same); *Nelson v. Corr. Med. Servs.*, 583 F.2d 522 (8th Cir. 2008); *Remlinger v. Lebanon City*, 2020 U.S. Dist. LEXIS 55480 (M.D. Pa. Mar. 27, 2020)("recent decisions addressing the shackling of pregnant inmates have universally applied a hybrid standard").   This standard considers "on the objective component . . . whether shackling pregnant detainees in the manner and under the circumstances in which the Plaintiff was shackled creates a substantial risk of serious harm that society chooses not to tolerate," and "on the subjective component . . . whether the officers were aware and understood (or should have been aware and understood) that they were exposing Plaintiff to a substantial risk of serious harm."   *Villegas*, 709 F.3d at 571.[4]

---

[3] The Plaintiff was sentenced in July 2018 to serve 15 months in the Cumberland County Jail.   *Plaintiff's Complaint, ¶ 32.*
[4] Both conditions of confinement claims and claims of inadequate medical care are tethered to the concept of "deliberate indifference."   Claims which require proof of deliberate indifference must establish both an objective and subjective component, as well as a causal connection between the challenged act and the claimed damages.   This

4

In this case, the Plaintiff was handcuffed on one occasion for a walk across a parking lot from the County prerelease center to the County jail. *Plaintiff's Complaint*, ¶¶ 35, 42, 43. This short walk happened on December 29 or December 30, 2018. *Plaintiff's Complaint, ¶ 42.* The Plaintiff did not deliver her child until February 11, 2019, approximately 44 days later. *Plaintiff's Complaint*, ¶¶ 42, 51. She does not allege that she was in any type of distress related to her pregnancy at the time. She does not allege that being handcuffed at the time caused her any actual injury, nor that it exposed her to a substantial risk of serious harm. Handcuffing a pregnant inmate under the circumstances outlined in the Complaint is not the type of incident that creates a substantial risk of serious harm that society chooses not to tolerate, nor are there allegations that Defendant Renna was subjectively aware of any risk of harm to the Plaintiff. The failure to allege actual injury, substantial risk of serious harm, or subjective awareness of harm is itself fatal to Plaintiff's handcuffing claim, as each is a required element of such a claim. The failure to meet basic pleading requirements, *see Section II, supra, at 2*, mandates dismissal.

That this action allegedly violated state law does not further Plaintiff's position. "The illegality of official conduct under local law 'can neither add to nor subtract from its constitutional validity'. *Snowden v. Hughes*, 321 U.S. 1, 11 (1944). A violation of a federal constitutional provision must be shown." *Ortega Cabrera v. Bayamon*, 562 F.2d 91, 102 (1st Cir. 1977); *see also Johnson v. City of Biddeford*, 454 F. Supp. 3d 75, 84 n.4 (D. Me. 2020)( stating that "§ 1983 provides a right of action for violations of the United States Constitution and of federal law, but not violations of the Maine Constitution or of state law.").

---

analysis traces its roots to *Farmer v. Brennan*, 511 U.S. 825, 837-40 (1994), and is part of the bedrock of Section 1983 law.

Because Plaintiff's allegation of being handcuffed does not set forth a constitutional violation, and therefore fails to meet the first prong of the qualified immunity test, it should be dismissed.

> **b.**  It was not clearly established that handcuffing the Plaintiff under the circumstances of this case was unlawful.

"[I]f an objectively reasonable official in [Officer Renna's] shoes might not have known for certain that his conduct was unlawful, then [he] is immune from liability." *Eves v. LePage*, 927 F.3d 575, 583 (1st Cir. 2019). The burden is on the plaintiff to "demonstrate that the law was sufficiently clear such that every reasonable official would understand that what he is doing is unlawful." *Id.*

There is no case law that clearly establishes that handcuffing an inmate, who is not in labor, not in medical distress, and is not being taken to the hospital, for a short walk across a parking lot, is unlawful.   Instead, cases that have considered the issue have recognized the constitution may be violated by shackling pregnant inmates only if the shackling occurs when the inmate is in labor, or in a medical emergency.  *See Mendiola-Martinez v. Arpaio*, 836 F.3d 1239 (9th Cir. 2016); *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563 (6th Cir. 2013); *Nelson v. Corr. Med. Servs.*, 583 F.2d 522 (8th Cir. 2008); *Remlinger v. Lebanon City,* 2020 U.S. Dist. LEXIS 55480 (M.D. Pa. Mar. 27, 2020); *Brawley v. Washington*, 712 F. Supp. 2d 1208 (W.D. Wash. 2010).

In *Mendiola-Martinez*, the inmate was handcuffed and shackled two weeks before her delivery date when she was transported to the hospital with contractions.   836 F.3d at 1244. There was a factual dispute as to whether she was restrained when she went to the hospital the following day to give birth.   *Id.*   She was not restrained during a cesarean section, but was again restrained after the surgery with a six-to-eight foot chain that went from her ankle to the hospital

bed.  *Id*.  The Ninth Circuit vacated summary judgment for the county defendants because the plaintiff presented sufficient evidence that restraining her when she was in labor exposed her to a substantial risk of harm, and that a jury could infer the county was aware of the risk because it was obvious.  *Id*. at 1251, 1256-57.

In *Villegas,* the pretrial detainee was handcuffed and shackled on the way to the hospital to deliver her baby and one of her legs was shackled to the hospital bed during labor.  709 F.3d at 566-67.  The Sixth Circuit found that shackling of pretrial detainees while in labor violates the Eighth Amendment, but that right is not unqualified and may be justified under some circumstances such as whether the detainee is a danger to herself or others or is a flight risk.  *Id*. at 574.  The court held that summary judgment for the plaintiff was improper because of disputes of material fact relating to whether the Plaintiff was a flight risk, the defendants' knowledge of a no restraint order, and conflicting expert testimony on the effects of the shackling.  *Id*. at 578.

In *Nelson*, the inmate had both of her legs shackled to her hospital bed during the final stages of labor.  583 F.2d at 525-26. The Eighth Circuit found that the Eighth Amendment was violated by this conduct and the defendant officer was not entitled to qualified immunity because the right to not be shackled during labor was clearly established.  *Id*. at 529-34.

In *Brawley* the inmate was in full restraints, including handcuffs which were attached to a metal chain around her waist, when she was taken to prenatal medical visits.  712 F. Supp. 2d at 1211-12.  She was also in full restraints when she was taken to the hospital in labor, and was chained to the hospital bed.  *Id*. at 1212.  Her leg restraints were removed just prior to an emergency cesarean and were put back on right after surgery.  *Id*. at 1213-14.  The court in that case held that, objectively, there was sufficient evidence that the inmate had a serious medical need

7

and was exposed to an unnecessary risk of harm, but summary judgment for either side was precluded by factual issues about whether the officers knew the inmate was in labor when they transported her to the hospital and their subjective knowledge of the risk of harm to the inmate. *Id*. at 1218-20. The court held that "by April 2007 shackling inmates while they are in labor was clearly established as a violation of the Eighth Amendment." *Id*. at 1220.

In *Remlinger*, the inmate was shackled when she was taken by paramedics to the hospital for emergency care several months before she gave birth and her leg was shackled to the hospital bed during labor. 2020 U.S. Dist. LEXIS 55480 *7-8. She was only unshackled when medical staff could not find the baby's heartbeat and during the cesarean section. *Id*. at *8. When she awoke from the surgery she was already re-shackled to the bed. *Id*. at *8-9. The court held that the complaint stated a claim for a violation of the Eighth Amendment based on these allegations given that she was a non-violent offender with no history of misconduct. *Id*. at *16-25.

These cases are all significantly different from the case at bar. They all involve shackling while the inmate or detainee was being transported to the hospital, or during and after labor. More importantly, in each of those cases, there were factual disputes as to whether the use of restraints created a substantial risk of serious harm that the officers were subjectively aware of. In contrast, Brown was only handcuffed once forty-four days before she gave birth. This happened during a short walk across a parking lot. There are no allegations in the Complaint that the use of handcuffs created a risk of any harm, let alone substantial harm, nor that the officers were aware of any such harm. Because it was not sufficiently clear such that every reasonable official would understand that Defendant Renna's conduct, as alleged, was unlawful, Plaintiff's claim based on being handcuffed fails to meet the second prong of the qualified immunity test, and should be dismissed.

8

*See al-Kidd*, 563 U.S. 731, 741-43 (2011).

      2.   <u>Defendants Brady, Dickey and Haskell are entitled to qualified immunity on the</u>
              <u>claim that their presence during the birth of Plaintiff's child was unconstitutional.</u>

          a.  It was not clearly established that being present during the birth of
                Plaintiff's child was unlawful.[5]

Plaintiff was transported to Maine Medical Center on February 11, 2019, to give birth to her child. *Complaint, ¶ 52*. Corrections officers accompanied her. *Complaint, ¶ 52*. The Complaint alleges that Brady and Dickey were present in the labor and delivery room when Plaintiff's child was born, *Complaint, ¶ 56,* and that Brady and Dickey saw the Plaintiff and her child's naked bodies.[6] *Complaint, ¶ 57*. In contrast to Brady and Dickey, the Complaint does not allege that Haskell viewed the Plaintiff's naked body. *See Complaint, ¶¶ 56*. Instead, Haskell was present at some point in the labor and delivery room. *Complaint, ¶ 59*. Brady is a female officer, while Dickey and Haskell are male officers. *Complaint, ¶ 24, 26*.

"The dispositive question is whether the violative nature of *particular conduct* is clearly established." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)(citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)(emphasis added). The clearly established inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)(citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). In this case, there is no clearly established precedent from the United State Supreme Court, the First Circuit or the sister circuits that the actions of officers in being present during the birth of Plaintiff's child was unlawful. Contrary to being clearly established, there is a dearth of case law specifically addressing the

---

[5] The Defendants begin the qualified immunity analysis at the second step. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).
[6] Plaintiff's child is not a plaintiff, and therefore the allegation regarding seeing the child's naked body is surplus.

presence of corrections officers when an inmate gives birth.

The First Circuit has "recognized that a limited right of bodily privacy against searches is not incompatible with incarceration." *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 42 (1st Cir. 2009). All of the First Circuit cases considering the issue of body privacy have been in the context of strip searches and body cavity searches. *See* e.g., *Sanchez,* 590 F.3d at 44 (rectal searches conducted by medical personnel based on position that plaintiff had contraband in his rectum were not unreasonable); *Swain v. Spinney*, 117 F.3d 1, 8 (1st Cir. 1997) (reasonable suspicion required for strip searching arrestee who was held in isolation); *Arruda v. Fair*, 710 F.2d 886, 886 (1st Cir. 1983)(upheld a blanket policy of strip searching convicted inmates when they enter or leave the unit on their way to or from the prison law library and infirmary, and after they receive visitors in the unit's visiting rooms). In *Cookish v. Powell*, the First Circuit considered cross-gender searches and held that:

> (1) inadvertent, occasional, casual, and/or restricted observations of an inmate's naked body by a guard of the opposite sex did not violate the Fourth Amendment and (2) if the observation was other than inadvertent, occasional, casual, and/or restricted, such observation would (in all likelihood) violate the Fourth Amendment, except in an emergency condition.

945 F.2d 441, 447 (1st Cir. 1991). The court in *Cookish* was considering whether a female officer who observed the strip search of a male inmate was entitled to qualified immunity. The court determined that the female officer was entitled to qualified immunity because the strip search took place during an emergency. *Id*. at 449.

These cases do not provide notice to Brady, Dickey and Haskell that their presence in the Plaintiff's hospital room was unlawful. Strip and body cavity searches are designed to provide officers with a "focused look," *Wood v. Hancock County*, 354 F.3d 57, 63 (1st Cir. 2003), for the

10

purpose of detecting contraband.   There are significant differences between being involved in some capacity in a strip search on the one hand, and being present in a hospital room during a birth, on the other.   There is no existing precedent which even addresses the issue, let alone places the statutory or constitutional question beyond debate.   The absence of controlling authority, or a robust consensus of persuasive authority, demonstrates that it would not have been apparent to the officers that their actions, as alleged, violated clearly established law.   For this reason, this claim should be dismissed as against them.

**B.**      **Plaintiff's Complaint fails to state a claim for supervisory and municipal liability.**

The claims against Defendants Kortes and Joyce are based on supervisory liability. *Complaint, Count VII, ¶¶ 119-122*; *Complaint, Count VI, ¶¶ 115-118.* The claims against Cumberland County are based on municipal liability. *Complaint, Count VIII, ¶¶ 123-128.* These claims fail because the Plaintiff has not pleaded the essential elements of a supervisory liability or municipal liability claim.   In addition, these claims fail because the individual officers are entitled to qualified immunity.

1.      Plaintiff's Complaint fails to state a claim for supervisory liability against Defendants Kortes and Joyce.

Generally, a supervisor cannot be held liable under § 1983 on a respondeat superior theory -- a supervisor's liability must be premised on his or her own acts or omissions and does not attach automatically even if a subordinate is found liable. To connect the liability dots successfully between supervisor and subordinate in this context, a plaintiff must show that one of the supervisor's subordinates abridged the plaintiff's constitutional rights and that the supervisor's (in)action was affirmatively linked to that behavior in the sense that it could be characterized as . . . gross negligence amounting to deliberate indifference.

*Justiniano v. Walker*, 986 F.3d 11, 20 (1st Cir. 2021)(citations and quotations omitted). Deliberate indifference requires that the plaintiff must show "(1) that the officials had knowledge of facts, from which (2) the officials can draw the inference (3) that a substantial risk of serious harm exists." *Guadalupe-Báez v. Pesquera*, 819 F.3d 509, 515 (1st Cir. 2016)(citations and quotations omitted). In addition, there must be a "showing [of] a strong causal connection between the supervisor's conduct and the constitutional violation." *Ramirez-Lluveras v. Rivera-Merced*, 759 F.3d 10, 19 (1st Cir. 2014). "[T]he supervisor must have notice of the unconstitutional condition said to lead to the claim." *Id*. at 20.   This can be proven by "showing a known history of widespread abuse sufficient to alert a supervisor to ongoing violations"; "isolated instances of unconstitutional activity ordinarily are insufficient." *Id*. (citations and quotations omitted).

The Complaint fails to allege the essential legal elements of a supervisory liability claim. The Complaint alleges only that Kortes and Joyce are responsible for training and supervision of the Defendant officers and are policymakers. *Plaintiff's Complaint, ¶¶ 62-66*.   This is insufficient to bring a supervisory liability claim.   With regard to the handcuffing claim, while the Plaintiff alleges this was not the first time a pregnant inmate was handcuffed, she does not allege that there was a "known history of widespread abuse," or that Kortes or Joyce were even aware that this had happened previously. *See Plaintiff's Complaint, ¶ 50*.   In fact, to the contrary, Plaintiff alleges that Joyce was *not* aware that she was handcuffed when she was pregnant until February 2019, months after the event. *Plaintiff's Complaint, ¶ 49*.   With regard to the claim of having officers present while the Plaintiff gave birth, the Plaintiff does not allege that this has occurred on any other occasions, and certainly not on a "widespread" basis, nor does the complaint allege that either Kortes or Joyce had any knowledge of this occurring.   Because the Complaint

does not allege the essential elements required in a supervisory liability claim, namely, (1) deliberate indifference, (2) a solid causal link between the conduct of Kortes and Joyce, and (3) a constitutional violation, this claim should be dismissed.

2.     Plaintiff's Complaint fails to state a claim for municipal liability against Defendant Cumberland County.

In order to establish that Defendant Cumberland County is liable for civil rights violations, the Plaintiff must establish that she suffered constitutional violations as a result of unconstitutional policies or customs of the Defendant.  *See Monell v. New York Department of Social Services*, 436 U.S. 658 (1978).   "[E]vidence of a single event alone cannot establish a municipal custom or policy."  *Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir. 1989).   In order to be liable for an unconstitutional custom or practice that custom or practice must be "so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice."  *Id.*   With regard to the handcuffing of pregnant inmates, the Complaint alleges that this occurred before, but does not allege that this was a widespread practice, nor that the policymakers were aware that this had occurred.   In fact, the Complaint actually alleges that the jail had a policy that pregnant inmates should *not* be handcuffed.  *See Complaint, ¶ 47*.   With regard to the presence of corrections officers during the birth of Plaintiff's child, the Complaint does not allege the existence of a "widespread and pervasive" custom, nor that any policy or practice was the moving force behind the alleged constitutional violation.   Likewise, the Complaint is devoid of any contention that policymakers were aware of this happening previously and yet failed to take action.   Plaintiff's allegations relate only a discrete, one-time event.   Therefore, the Complaint does not support a claim for relief based on municipal liability.

3.    These claims also fail because the Defendant officers are entitled to qualified immunity.

Where the Defendant officers "ha[ve] inflicted no constitutional harm, neither the municipality nor the supervisor can be held liable." *Wilson v. Town of Mendon*, 294 F.3d 1, 6 (1st Cir. 2002) (citing *Los Angeles v. Heller*, 475 U.S. 796, 798 (1986)). In this case, the Defendant officers, did not violate Plaintiff's constitutional rights. *See supra*, Part III(A)(1)(a) (discussing why Renna did not violate Brown's constitutional rights). Furthermore, any failure to train claim is precluded by a finding that the law was not clearly established. *See Fletcher v. Town of Clinton*, 196 F.3d 41, 56 (1st Cir. 1999); *see supra Part III(A)(1)(b)*(discussing why it was not clearly established that handcuffing the Plaintiff was unlawful) *and Part III(A)(2)(a)*(discussing why it was not clearly established that the presence of corrections officers at the birth of Plaintiff's child was unlawful). In this case, the law was not clearly established with regard to Plaintiff's claims relating to the handcuffing of pregnant inmates and the presence of officers during the birth of a child. *See supra*, *Part III(A)* (discussing why these rights were not clearly established). For this reason, the Complaint should be dismissed against Defendants Kortes, Joyce and Cumberland County.

**C.    There is no basis for liability under 30-A M.R.S. § 1582.**

While the actions alleged in the Complaint, if true, could be inconsistent with the letter of 30-A M.R.S. § 1582, there is no private cause of action under this statute. In order for there to be a private right of action the Legislature "would have either expressed its intent in the statutory language or legislative history or, more likely, expressly enacted one." *Larrabee v. Penobscot Frozen Foods, Inc.*, 486 A.2d 97, 101 (Me. 1984). In this case 30-A M.R.S. §§ 1581-1583 does

14

not include an express private right of action.   For this reason, claims based on 30-A M.R.S. § 1582 should be dismissed.

**D.**     **The Complaint fails to state a claim for conspiracy under 42 U.S.C. § 1985(3).**

> A civil rights conspiracy as commonly defined is a combination of two or more persons acting in concert to commit an unlawful act . . . the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another. Accordingly, a section 1985(3) claim must contain four elements: First, the plaintiff must allege a conspiracy; second, she must allege a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws; third, she must identify an overt act in furtherance of the conspiracy; and finally, she must show either injury to person or property, or a deprivation of a constitutionally protected right.

*Parker v. Landry*, 935 F.3d 9, 17-18 (1st Cir. 2019).

With regard to the handcuffing claim, only Defendant Renna was involved with this claim so there could be no agreement with other officers regarding his conduct.   Likely for this reason, there is no allegation of a conspiratorial purpose.   Further, where there was no constitutional violation, *see supra*, *Part III(A),* there can be no conspiracy.

With regard to the officers who were present in the hospital room when the Plaintiff was in labor, the Plaintiff does not allege any type of agreement or conspiratorial purpose between the parties involving the actions that occurred.   Because there are no allegations that would permit the court to infer an agreement, motivated by some discriminatory animus, among the Defendants to deprive her of her constitutional rights, the Complaint does not allege even the basic elements needed to state a claim for civil conspiracy.

**E.**     **There is no basis for a civil conspiracy claim outside of 42 U.S.C. § 1985.**

Plaintiff lists civil conspiracy as a cause of action. *Complaint, Count X, ¶¶ 132-135.* "[C]ivil conspiracy is not an independent tort in Maine, liability ordinarily may not be imposed on

this basis alone." *Johnson v. City of Biddeford*, 454 F. Supp. 3d 75, 93 (D. Me. 2020)(citing *Fiacco v. Sigma Alpha Epsilon Fraternity*, 484 F. Supp. 2d 158, 176 & n.18 (D. Me. 2007) (citing Cohen v. Bowdoin, 288 A.2d 106, 110 (Me. 1972)).   "[A]bsent the actual commission of some independently recognized tort, a claim for civil liability for conspiracy fails." *Potter, Prescott, Jamieson & Nelson, P.A. v. Campbell*, 1998 ME 70, ¶ 8.   The Plaintiff has not alleged any other torts in this action.   For this reason, the civil conspiracy claim under state law should be dismissed.

## IV.   CONCLUSION

Defendants respectfully request that the Court grant this Motion to Dismiss Plaintiff's Complaint.

Dated:   March 31, 2021

   /s/   Peter T. Marchesi
Peter T. Marchesi, Esq.

   /s/   Cassandra S. Shaffer
Cassandra S. Shaffer, Esq.

Wheeler & Arey, P.A.
Attorneys for Defendants
27 Temple Street
Waterville, ME   04901

16

# UNITED STATES DISTRICT COURT
## District of Maine

JADEN BROWN,                          )
                        Plaintiff   )   Docket No.   2:20-CV00478-NT
                                           )
v.                                    )
                                           )
CUMBERLAND COUNTY, KEVIN              )
JOYCE, TIMOTHY KORTES, MARK           )
RENNA, SAM DICKEY, DEPUTY             )
BRADY, and DEPUTY HASKELL,            )
                      Defendants   )

## CERTIFICATE OF SERVICE

I, Peter T. Marchesi, hereby certify that:

- Defendants' Motion to Dismiss Complaint

has been served this day on Plaintiff by filing with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

          Kristine Hanly, Esq.          *kristine@hanlylaw.com*

Dated:   March 31, 2021             /s/   Peter T. Marchesi
                                          Peter T. Marchesi, Esq.
                                          Wheeler & Arey, P.A.
                                          Attorneys for Defendants
                                          27 Temple Street
                                          Waterville, ME   04901