**UNITED STATES DISTRICT COURT**
**District of Maine**

| | | |
|---|---|---|
| JADEN BROWN,<br>Plaintiff<br><br>v.<br><br>CUMBERLAND COUNTY, KEVIN JOYCE, TIMOTHY KORTES, MARK RENNA, SAM DICKEY, DEPUTY BRADY, and DEPUTY HASKELL,<br>Defendants | ) | Docket No. 2:20-CV-00478-NT |

**MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS CUMBERLAND COUNTY, KEVIN JOYCE AND TIMOTHY KORTES, WITH INCORPORATED MEMORANDUM OF LAW**

NOW COME Defendants Cumberland County, Kevin Joyce and Timothy Kortes (the County Defendants), through counsel, and pursuant to Fed.R.Civ.P. 56(b), move for summary judgment in their favor. Filed in connection with this motion is the County Defendants' Statement of Material Facts pursuant to Local Rule 56(b).

## I. INTRODUCTION

The Plaintiff's Complaint is based on two separate allegations: (1) that she was handcuffed as a pregnant inmate in violation of state statute and constitutional law, and (2) that corrections officers were present during the labor and delivery of her child. Claims based on the former have previously been dismissed (Document 29, Order on Defendants' Motion to Dismiss dated August 18, 2021); thus, the remaining claims are based solely on the latter. All are brought under 42 U.S.C. § 1983 and the Maine Civil Rights Act. Plaintiff alleges supervisory liability on the parts of Defendants Joyce (Kevin Joyce is the Sheriff of Cumberland County) and Kortes (Timothy Kortes is the jail administrator for the Cumberland County Jail), and municipal liability claims against

Defendant Cumberland County.

## II. FACTS

The undisputed facts of this case are set forth in Defendants Cumberland County, Kevin Joyce and Timothy Kortes' Statement of Material Facts (hereinafter "SMF"). These Defendants incorporate the SMF into this memorandum of law. A brief summary of facts follows in order to provide immediate context for the reader.[1]

In July 2018, Jaden Brown turned herself in on an outstanding warrant on a probation violation and was serving a total of fifteen months in the Cumberland County Jail for trafficking heroin. SMF ¶ 1. Ms. Brown was pregnant when she turned herself in in July 2018, and was released after giving birth to her daughter, Zara, on February 11, 2019. SMF ¶ 2. 3. Ms. Brown was admitted to the hospital on February 10, 2019, and her baby was born at 1:11 A.M. on February 11, 2019. SMF ¶ 3.

Ms. Brown testified that prior to the shift change around 10:45 P.M. on February 10, corrections officer Angel Dufour was in her hospital room with Ms. Brown's express permission. SMF ¶ 4. Ms. Brown testified that after the shift change, corrections officers Brady and Dickey were brought to the hospital by Daniel Haskell, and that Haskell stayed rather than just dropping them off. SMF ¶ 5. Ms. Brown testified that corrections officers Brady, Dickey and Haskell were each in the hospital room at some point, although she did not start pushing right away when the

[1] On a motion for summary judgment, the court must view the facts in the light most favorable to the non-movant, the plaintiff; therefore, the following recitation is based on the plaintiff's version of events, although defendants reserve the right to dispute any or all of plaintiff's factual assertions should trial be necessary. In addition, this recitation may contain background facts that are not contained in the SMF because they are not "material" to the issues to be decided on this motion.

officers arrived. SMF ¶ 6. Ms. Brown was in three different rooms during her admission to the hospital. SMF ¶ 7.

Ms. Brown testified that Carrie Brady and Sam Dickey were seated in her birthing room and that Daniel Haskell was standing and roaming around. SMF ¶ 8. Ms. Brown cannot say whether Daniel Haskell was present in her room at the time of actual delivery, or at any time after 11:30 P.M. on February 10, 2019. SMF ¶ 9. There were also two doctors, two or three medical students, and one nurse in the room. SMF ¶ 10.

Ms. Brown alleges that Cumberland County corrections officers Carrie Brady, Sam Dickey and Daniel Haskell were present in her birthing room during her labor and delivery of her child, allegedly in violation of Maine state law and her Constitutional rights under the Eighth and Fourteenth Amendments. Ms. Brown alleges in her Complaint that Sheriff Kevin Joyce and Jail Administrator Timothy Kortes are responsible for training and supervision of the individual corrections officers, and failed in that duty. Ms. Brown seeks to hold Cumberland County liable for a pattern and practice of failing to adequately train and supervise officers, leading to the alleged constitutional violation by the individual corrections officers in this case.

## III. STANDARD OF REVIEW

Summary judgment should be granted when the record evidence demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed.R.Civ.P. 56(a).* The moving party bears the burden of demonstrating the lack of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). The record is reviewed in the light most favorable to the non-moving party, and that party must be given the benefit of reasonable inferences drawn from properly asserted facts. *See Nicolo v. Philip*

*Morris, Inc.*, 201 F.3d 29 (1st Cir. 2000). Summary judgment should be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

## IV. ARGUMENT

### A. There are no grounds for supervisory liability because the individual officers are entitled to qualified immunity on the constitutional claims.[2]

Where the Defendant officers "ha[ve] inflicted no constitutional harm, neither the municipality nor the supervisor can be held liable." *Wilson v. Town of Mendon*, 294 F.3d 1, 6 (1st Cir. 2002) (citing *Los Angeles v. Heller*, 475 U.S. 796, 798 (1986)). In this case, the Defendant officers did not violate Plaintiff's constitutional rights. See Motion for Summary Judgment of Defendants Dickey, Brady and Haskell. The County Defendants join in that motion for summary judgment and incorporate that motion by reference herein. Because the individual officers did not violate the Plaintiff's rights, there can be no supervisory or municipal liability. For this reason, the Defendants Kortes, Joyce and Cumberland County are entitled to judgment in their favor as a matter of law. Although the County defendants believe that the resolution of the qualified immunity issue in favor of the individual officers will also be dispositive of the supervisory and municipal liability claims, the County defendants will address those claims below. Even if the Court rules that the individual officers are not entitled to summary judgment based on qualified immunity, the County defendants are entitled to summary judgment because the plaintiff has not demonstrated a basis for supervisory liability or municipal liability as a matter of law.

---

[2] "[T]he protections provided by the Maine Civil Rights Act, including immunities, are coextensive with those afforded by 42 U.S.C. § 1983." *Estate of Bennett v. Wainwright*, 548 F.3d 155, 178-79 (1st Cir. 2008). Thus, claims under the MCRA are resolved by the Court's determination of the Section 1983 claims.

**B. Plaintiff's Complaint cannot survive summary judgment on claims for supervisory and municipal liability.**

The claims against Defendants Kortes and Joyce are based on supervisory liability. *Complaint, Count VII, ¶¶ 119-122*; *Complaint, Count VI, ¶¶ 115-118.* The claims against Cumberland County are based on municipal liability. *Complaint, Count VIII, ¶¶ 123-128.* These claims fail because the Plaintiff has failed to prove the essential elements of a supervisory liability or municipal liability claim.

1. Plaintiff has failed to establish a prima facie case for supervisory liability against Defendants Kortes and Joyce.

> Generally, a supervisor cannot be held liable under § 1983 on a respondeat superior theory -- a supervisor's liability must be premised on his or her own acts or omissions and does not attach automatically even if a subordinate is found liable. To connect the liability dots successfully between supervisor and subordinate in this context, a plaintiff must show that one of the supervisor's subordinates abridged the plaintiff's constitutional rights and that the supervisor's (in)action was affirmatively linked to that behavior in the sense that it could be characterized as . . . gross negligence amounting to deliberate indifference.

*Justiniano v. Walker*, 986 F.3d 11, 20 (1st Cir. 2021) (citations and quotations omitted). Deliberate indifference requires that the plaintiff must demonstrate "(1) a grave risk of harm, (2) the defendant's actual or constructive knowledge of that risk, and (3) his failure to take easily available measures to address that risk." *Id.* (quoting *Camilo-Robles v. Hoyos*, 151 F.3d 1, 7 (1st Cir. 1998)). In addition, there must be a "showing [of] a strong causal connection between the supervisor's conduct and the constitutional violation." *Ramirez-Lluveras v. Rivera-Merced*, 759 F.3d 10, 19 (1st Cir. 2014). "[T]he supervisor must have notice of the unconstitutional condition said to lead to the claim." *Id*. at 20. This can be proven by "showing a known history of widespread abuse

sufficient to alert a supervisor to ongoing violations"; "isolated instances of unconstitutional activity ordinarily are insufficient." *Id*. (citations and quotations omitted).

Plaintiff has failed to establish the essential legal elements of a supervisory liability claim, even assuming (without conceding) that Plaintiff's constitutional rights were violated. Although corrections officers were present in her birthing room during the labor and delivery of Plaintiff's child, Plaintiff has failed to establish that happened because the corrections officers were insufficiently trained, or because of a longstanding County policy or custom. Plaintiff has failed to demonstrate that this conduct has occurred on any other occasions, and certainly not on a "widespread" basis, nor has Plaintiff demonstrated that either Kortes or Joyce had any knowledge of the conduct occurring. On the contrary, although Kevin Joyce has been the Sheriff of Cumberland County since December 2010 and before that was Deputy Sheriff since July 2003 (SMF ¶ 11), Ms. Brown's complaint is the only one of which he has become aware of corrections officers being present in the birthing room during a pregnant inmate's labor and delivery of her child. SMF ¶ 12. Major Timothy Kortes is likewise not aware of any other pregnant inmates of Cumberland County Jail complaining that corrections officers were present during the labor or delivery of their child during his tenure as Jail Administrator since January 7, 2019. SMF ¶¶ 21, 25.

Corrections officers receive training on the constitutional rights of inmates, which includes training on rights specific to pregnant inmates. SMF ¶ 13. That training is provided on an ongoing basis, and some of the training includes having corrections officers review and sign off on existing policies and standard operating procedures. SMF ¶ 22. As of February 2019, Cumberland County had in effect a specific policy that provided that corrections officers are not to be present in the

birthing room during an inmate's labor and delivery. SMF ¶¶ 13, 23. Training records for Daniel Haskell, Samuel Dickey, and Carrie Brady demonstrate that they each received that training and signed off on that specific policy prior to February 2019. SMF ¶ 24.

Although what happened after the birth of Plaintiff's child is not significant to the issue of supervisory liability, it is worth noting that after Ms. Brown made Sheriff Joyce aware that corrections officers had been present during her labor and delivery, Sheriff Joyce initiated an investigation into that incident. SMF ¶ 14. Sheriff Joyce determined that Officers Brady and Dickey had violated Cumberland County policy, and took disciplinary action. SMF ¶¶ 15-16. Officer Brady received a verbal counseling, SMF ¶ 17, and Officer Dickey's employment was terminated. SMF ¶ 18. However, Officer Dickey filed a union grievance which was ultimately sustained despite Sheriff Joyce's position that the termination was justified, and Officer Dickey's employment was reinstated. SMF ¶ 19. Daniel Haskell was given a coaching counseling by Captain Butts for his part in being in Ms. Brown's room. SMF ¶ 29. The fact that Sheriff Joyce initiated an investigation and took disciplinary action against the involved officers demonstrates that Cumberland County does **not** have a policy or practice of allowing policy violations such as the one of which Ms. Brown has complained.

Based on the undisputed facts of this case, Plaintiff has failed to establish any of the prerequisites for supervisory liability. Plaintiff has not shown that there was a grave risk of harm or that Sheriff Joyce and Major Kortes had actual or constructive knowledge of that risk. Indeed, in the sixteen years prior to Ms. Brown's labor and delivery, there had been no inmates complain that corrections officers had been present during their childbirth; thus, Sheriff Joyce and Major Kortes had no reason to suspect that corrections officers would stay and be present in the room for

Ms. Brown's childbirth. Nor did Sheriff Joyce and Major Kortes fail to take easily available measures to address the risk, since corrections officers are provided training on an ongoing basis, and Officers Dickey and Brady had received training on Cumberland County's policy that corrections officers may not be present in the room during labor or childbirth unless specifically requested by medical personnel.

For the same reasons, Plaintiff has not demonstrated a strong causal connection between the actions (or inactions) of the supervisors, Sheriff Joyce and Major Kortes, and the alleged constitutional violation. Plaintiff has made no showing of a known history of widespread abuse sufficient to alert Sheriff Joyce and Major Kortes to ongoing violations. At the most, this was a single isolated incident, which has never happened before or since during the tenures of Joyce and Kortes. Such an isolated incident is insufficient to establish supervisory liability. See *Ramirez-Lluveras, supra*. There has been no showing of reckless or callous indifference to the constitutional rights of others, as corrections officers are trained on the policy prohibiting their presence in an inmate's birthing room during labor or delivery, and no similar incidents have occurred during the tenures of Sheriff Joyce and Major Kortes.

In denying the previous motion to dismiss the supervisory liability claims in this case, this Court gave the plaintiff some latitude, reasoning that at the pleading stage, it was unlikely that the plaintiff would have access to any information about similar incidents. Doc. No. 29, Order on Defendants' Motion to Dismiss, pages 23-24. The Court noted that it was "certainly possible that, after discovery, the facts will reveal that Sheriff Joyce and Major Kortes were unaware of the actions of the correctional officers or that the Plaintiff's experience was an isolated incident not caused by the supervisors' action or inaction. But at this stage, given the nature of the Plaintiff's

claims, I conclude that her claims against these supervisors should survive dismissal." *Id.* at page 24. While giving the Plaintiff some latitude prior to discovery was within the Court's discretion, discovery has now been completed and Plaintiff has unearthed no evidence demonstrating a pattern or practices of corrections officers being in labor or delivery rooms while inmates gave birth. Indeed, the evidence demonstrates, as the Court surmised it might, that Sheriff Joyce and Major Kortes were unaware of the actions of the corrections officers and that Plaintiff's experience was an isolated incident that occurred despite the fact that officers are properly trained on Cumberland County's policy. As such, summary judgment should be entered in favor of Sheriff Kevin Joyce and Major Timothy Kortes on Plaintiff's supervisory liability claims as a matter of law.

2. Plaintiff has failed to prove a basis for municipal liability against Defendant Cumberland County.

A municipality may be liable under 42 U.S.C. § 1983 if it itself subjects a person to a deprivation of rights. However, a municipality is only responsible for its own illegal acts, and is not vicariously liable for its employee's actions under the doctrine of *respondeat superior*. *Monell v. Dep't. of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978). It is well settled that a plaintiff who seeks to impose liability on a municipality under Section 1983 must prove that "actions pursuant to official municipal policy" caused his or her injury. *Monell*, 436 U.S. at 691. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 536 U.S. 51, 61 (2011). "[E]vidence of a single event alone cannot establish a municipal custom or policy." *Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir. 1989). In order to be liable for an unconstitutional custom or practice that custom or practice must be "so well settled and widespread that the policymaking officials of the municipality can be said to have

either actual or constructive knowledge of it yet did nothing to end the practice." *Id.* Based on the evidence set forth at length above, Plaintiff has not demonstrated that there existed a "widespread and pervasive" custom of having corrections officers present during inmates' labor and delivery, or that any policy or practice was the moving force behind the alleged constitutional violation. Likewise, there is simply no evidence that policymakers were aware of this happening previously and yet failed to take action. Plaintiff's allegations relate only a discrete, one-time event.

Plaintiff alleges that Cumberland County failed to properly train the corrections officers, and that that failure of training led to the alleged violation of her constitutional rights by having corrections officers present in the birthing room. Allegations of a "failure to train" are a subset of a policy or custom claim where the plaintiff demonstrates that the failure to train reflects deliberate indifference to the rights of persons with whom the untrained employees come into contact. *See e.g., City of Canton v. Harris,* 489 U.S. 378, 388 (1989). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Board of the County Commissioners v. Brown*, 520 U.S. 397, 410 (1997). Thus, when policymakers are on actual or constructive notice that a particular omission in their training program causes employees to violate citizens' constitutional rights, a municipality may be deemed deliberately indifferent if the policymakers choose to retain that program. *Id.* at 407. The city's "policy of inaction" in light of notice that its program will cause constitutional violations "is the functional equivalent of a decision by the city itself to violate the Constitution." *Canton*, 489 U.S. at 395 (O'Connor, J., concurring in part and dissenting in part). A less stringent standard of fault for a failure-to-train claim "would result in *de facto respondeat superior* liability on municipalities…" *Id.* at 392.

"It isn't enough to show that there were general deficiencies in the county's training program…." *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010) (internal quotations and citations omitted). "Rather, a plaintiff must identify a specific deficiency that was obvious and closely related to his injury, so that it might fairly be said that the official policy or custom was both deliberately indifferent to his constitutional rights and the moving force behind his injury." *Id.* The plaintiff must show that the failure to train reflects a conscious choice among alternatives that evinces a deliberate indifference to the rights of the plaintiff. *See e.g., Canton*, 489 U.S. at 389.

Proof of deliberate indifference generally requires a showing of more than a single instance of the lack of training or supervision causing a violation of constitutional rights. *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003) (internal quotations and citations omitted). "Rather, deliberate indifference generally requires that a plaintiff demonstrate at least a pattern of similar violations arising from training that is so clearly inadequate as to be obviously likely to result in a constitutional violation." *Id.; see also Buchanan v. Maine*, 417 F.Supp.2d 45, 65-68 (D.Me. 2006).

*Connick v. Thompson*, 563 U.S. 51 (2011) is particularly instructive with respect to failure-to-train claims under 42 U.S.C. § 1983. In that case, John Thompson was prosecuted for attempted armed robbery, and prosecutors in the Orleans Parish District Attorney's Office failed to disclose exculpatory blood-typing evidence that should have been turned over to the defense under *Brady v. Maryland*, 373 U.S. 83 (1963). Thompson was convicted and, as a result, chose not to testify in his own defense in a subsequent trial for murder, in which he was again convicted. Thompson spent 18 years in prison, including 14 years on death row. A month before Thompson's scheduled

execution, his investigator discovered the undisclosed evidence, and both of Thompson's convictions were ultimately vacated. Thompson sued the District Attorney for Orleans Parish, Harry Connick, in his official capacity under Section 1983, alleging that Connick's failure to train his prosecutors adequately about their duty to produce exculpatory evidence had caused his wrongful conviction and imprisonment. The jury awarded Thompson $14 million, and the Fifth Circuit Court of Appeals affirmed by an evenly divided *en banc* court. The Supreme Court reversed, finding that a district attorney's office may not be held liable under Section 1983 for failure to train based on a single *Brady* violation.

The Court noted that for Thompson to prevail on a failure-to-train theory, he bore the burden of proving (1) that Connick, as policymaker for the district attorney's office, was deliberately indifferent to the need to train the prosecutors about their *Brady* disclosure obligation with respect to evidence of that type, and (2) that the lack of training actually caused the *Brady* violation. 563 U.S. at 59. The court found that Connick was entitled to judgment as a matter of law because Thompson did not prove that Connick was on actual or constructive notice of, and therefore was deliberately indifferent to, a need for more or different *Brady* training. *Id.* Thompson argued that during the ten years preceding his armed robbery trial, Louisiana courts had overturned four convictions because of *Brady* violations by prosecutors in Connick's office; however, the Court found that "[t]hose four reversals could not have put Connick on notice that the office's Brady training was inadequate with respect to the sort of *Brady* violation at issue here", since none of those cases involved failure to disclose a similar type of evidence. *Id.* at 62-63. The Court found that "failure-to-train liability is concerned with the substance of the training, not the particular instructional format. The statute does not provide plaintiffs or courts *carte blanche* to

micromanage local governments throughout the United States." *Id.* at 68. The Court noted that although prosecutors will not always make correct *Brady* decisions and that guidance regarding specific Brady questions would assist prosecutors, "showing merely that additional training would have been helpful in making difficult decisions does not establish municipal liability." *Id.* The Court found that Connick was entitled to "judgment as a matter of law on the failure-to-train claim because Thompson did not prove a pattern of similar violations that would 'establish that the 'policy of inaction' [was] the functional equivalent of a decision by the city itself to violate the Constitution.'" *Id.* at 72, quoting *Canton*, 489 U.S. at 395 (opinion of O'Connor, J.). *See also Haley v. City of Boston*, 657 F.3d 39, 52 (1st Cir. 2011) ("Triggering municipal liability on a claim of failure to train requires a showing that municipal decisionmakers either knew or should have known that training was inadequate but nonetheless exhibited deliberate indifference to the unconstitutional effects of those inadequacies."); *Gray v. Cummings*, 917 F.3d 1, 14 (1st Cir. 2019) (finding that expert testimony about appropriate police practices, in the absence of evidence of a pattern of similar constitutional violations, was insufficient to support a failure-to-train claim).

In the instant case, in addition to the fact that the policymakers were not on notice of any pattern of past constitutional violations similar to those alleged in this case, there is also no evidence that the policymakers were on notice that the training that was being provided to corrections officers was deficient and likely to cause future violations of constitutional rights. The burden is on the Plaintiff, as the nonmoving party, to "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co., Inc. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999); *see also* Fed. R. Civ. P. 56(e). "Mere allegations, or conjecture unsupported in the record, are insufficient." *Barros-Villahermosa v. United States*, 642 F.3d 56,

58 (1st Cir. 2011) (quoting *Rivera-Marcano v. Normeat Royal Dane Quality A/S*, 998 F.2d 34, 37 (1st Cir. 1993); *see also Wilson v. Moulison N. Corp.*, 639 F.3d 1, 6 (1st Cir. 2011) ("A properly supported summary judgment motion cannot be defeated by conclusory allegations, improbable inferences, periphrastic circumlocutions, or rank speculation."). As such, Plaintiff has failed to meet her burden of proving that any custom or policy of Cumberland County, or any failure to train about the constitutional rights of inmates during labor and delivery, rises to the level of deliberate indifference for municipal liability. Summary judgment should be entered in favor of the County defendants on Plaintiff's claims of municipal liability as a matter of law.

Dated: September 30, 2022

/s/ Peter T. Marchesi

Peter T. Marchesi, Esq.
Wheeler & Arey, P.A.
Attorneys for Defendants Joyce, Kortes and Cumberland County
27 Temple Street
Waterville, ME 04901

**UNITED STATES DISTRICT COURT**
**District of Maine**

| | | |
|---|---|---|
| JADEN BROWN, Plaintiff | ) | Docket No. 2:20-CV00478-NT |
| v. | ) | |
| CUMBERLAND COUNTY, KEVIN JOYCE, TIMOTHY KORTES, MARK RENNA, SAM DICKEY, DEPUTY BRADY, and DEPUTY HASKELL, Defendants | ) | |

**CERTIFICATE OF SERVICE**

I, Peter T. Marchesi, hereby certify that:

- Motion for Summary Judgment of Defendants Cumberland County, Kevin Joyce and Timothy Kortes

has been served this day on Plaintiff by filing with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

Jeremy W. Dean, Esq. *jwdean@jwdlegal.com*
John Wall, III, Esq. *jwall@monaghanleahy.com*

Dated: September 30, 2022

/s/ Peter T. Marchesi
Peter T. Marchesi, Esq.
Wheeler & Arey, P.A.
Attorneys for Defendants Joyce, Kortes and Cumberland County
27 Temple Street
Waterville, ME 04901